Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY ALANJARY, as Successor in Interest to the ESTATE OF VIANNA GRANILLO, and as GUARDIAN AD LITEM to A.A., and DIANA SANCHEZ, individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, AMY VANBEEKOM, DEMECHIKO FRENCH, THOMAS GRIMALDI, MARIA VARGAS-PIPPINS, AND DOES 1-10, inclusive, <br><br> Defendants. | Case No. **'24CV0071 W    SBC** <br><br> **COMPLAINT FOR:** <br><br> 1. **4th AMENDMENT – UNLAWFUL ARREST** <br><br> 2. **14TH AMENDMENT –OBJECTIVE INDIFFERENCE TO A SERIOUS MEDICAL NEED** <br><br> 3. **14TH AMENDMENT –INADEQUATE MEDICAL AND MONITORING POLICIES** <br><br> 4. **14TH AMENDMENT – FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE** <br><br> 5. **DEPRAVATION OF FAMILIAL ASSOCIATION** <br><br> 6. **BANE ACT – § 52.1** <br><br> 7. **NEGLIGENCE – § 377.30** <br><br> 8. **WRONGFUL DEATH – § 377.60** |

COMPLAINT                                                    CASE NO.

## I.

## FACTUAL ALLEGATIONS



1.      Vianna Granillo (herein "Ms. Granillo") was a kind, loving mother who struggled with addiction.  She was 25 years old when she was discovered unresponsive in her cell at Las Colinas Detention Center.

2.      Ms. Granillo's son, A.A., acting through his Guardian *Ad Litem,* Beverley Alanjary, and as Successor in Interest to Ms. Granillo, brings this lawsuit against the County of San Diego, its DOE employees, Amy Vanbeekom, Demechiko French, Thomas Grimaldi, and Maria Vargas-Pippins, for causing Ms. Granillo's premature death.

3.      As detailed below, on July 8, 2022, Ms. Granillo was unlawfully arrested by DOE County Sheriff's deputies for violating terms of a protective order that DOE deputies knew was no longer in effect.  Ms. Granillo was then unlawfully detained at Las Colinas Detention Center.

4.      During intake, Ms. Granillo was honest and upfront with the DOE medical staff, including Defendants Amy Vanbeekom, Demechiko French, Thomas Grimaldi, and Maria Vargas-Pippins, and told staff that she was an opiate addict and would be suffering from withdrawals.  However, medical records indicate that Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, and Defendant Maria Vargas-Pippins, and other DOE medical staff, failed to administer withdrawal medication to Ms. Granillo.  In fact, four days after she was booked medical records show that Ms. Granillo was begging for opiate withdrawal medication.

5.      Less than 24 hours later, Ms. Granillo was discovered unresponsive in her cell.  DOE deputies discovered Ms. Granillo unresponsive and administered two doses of Narcan to no effect.  Shockingly, DOE deputies intentionally refused

2

COMPLAINT                                          CASE NO.

to administer cardiopulmonary resuscitation ("CPR"). Generally, CPR is performed for the very purpose of preserving brain function until other measures can be taken to restore oxygen circulation. Medical records indicate that Ms. Granillo went twelve minutes without necessary medical aid. At that point, Ms. Granillo was transported to the emergency room and died a day later. Hospital records indicate the cause of death to be severe anoxic brain injury; meaning, Ms. Granillo suffered from irreversible brain damage.

6.    Unfortunately, Ms. Granillo was among numerous individuals that died in-custody due to the County's constitutionally inadequate treatment of inmates withdrawing from known substances. In 2022, nineteen inmates died in San Diego County jails. Due to its horrific in-custody death rate over the last ten years, the California State Auditor issued a scathing report regarding San Diego County jail deaths. The Auditor found that San Diego County jails had the **most** in-custody deaths than any other county in California. The Auditor found the County "failed to adequately prevent and respond to the problem and called for legislative action" to force the County to incorporate nationally recognized standards to prevent foreseeable deaths.

7.    The report stated, "The high rate of death in San Diego County jails compared to other counties raises concerns and suggests that **underlying systemic issues with the Sheriff's Department's policies and practices undermined its ability to ensure the health and safety of the individuals in its custody.**" After a thorough inspection of the jail and an audit of its policies, the Auditor concluded, **"significant deficiencies in the Sheriff's Department's provision of care to incarcerated individuals likely contributed to the deaths in its jails."** As such, the County is equally responsible for Ms. Granillo's premature death.

8.    Ms. Granillo left behind a four-year old son, A.A., and her mother, Diana. She also left behind a strong tribe of women, including her sisters and grandmother, that were distraught by the news that Ms. Granillo died in-custody in

3

COMPLAINT                                        CASE NO.

such a dehumanizing way. Since her passing, Ms. Granillo's family has lived with broken and heavy hearts. They brought this action not only to hold Defendants accountable, but to prevent other families from needlessly experiencing similar heartache and devastation.

## II.

## JURISDICTION AND VENUE

9. This action arises under the Constitution and laws, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. section 1983. The Jurisdiction of this court is invoked pursuant to 28 U.S.C. section 1331. State law claims are alleged as well, over which Plaintiffs invoke the Court's supplemental jurisdiction.

10. This case is instituted in the United States District Court for the Southern District of California pursuant to 28 U.S.C. section 1391, as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices, work, and/or reside.

11. Pursuant to the California Government Code, Plaintiffs filed their tort claim with the County of San Diego based on the foregoing incident on January 12, 2023, and amended their claim on November 20, 2023. The claim was rejected on July 10, 2023. Thus, the present complaint is timely, pursuant to California Government Code section 945.6.

12. At the time of Ms. Granillo's suffering and premature death, Ms. Granillo had not been provided with a probation revocation hearing and therefore had not been found to have violated the terms of the restraining order or probation. Accordingly, Ms. Granillo was a pretrial detainee at the time she prematurely died.

## III.

## THE PARTIES

13. Ms. Granillo was a resident of San Diego County in the State of California and a citizen of the United States at all times relevant to this complaint.

4

COMPLAINT                    CASE NO.

She died in-custody at Las Colinas Detention Center (LCDC), which is located in the County of San Diego. Ms. Granillo's Estate is represented by her Successor in Interest, Beverley Alanjary. (See Successor in Interest Declaration, Exhibit 1.)

14.   A.A. is Ms. Granillo's minor son. A.A., acting through his Guardian *Ad Litem,* Beverley Alanjary, brings this lawsuit individually. At all times relevant to this Complaint, A.A. resided in the County of San Diego.

15.   Diana Sanchez is Ms. Granillo's mother. She brings her claim individually. At all times relevant to this Complaint, Diana Sanchez resided in the County of San Diego.

16.   Defendant Amy Vanbeekom worked at LCDC during all times relevant to this Complaint and performed the wrongful acts alleged in this Complaint while working at LCDC. Based on information and belief, Defendant lives in the County of San Diego at all times mentioned herein, and committed the culpable acts against Ms. Granillo in the County of San Diego.

17.   Defendant Demechiko French worked at LCDC during all times relevant to this Complaint and performed the wrongful acts alleged in this Complaint while working at LCDC. Based on information and belief, Defendant lives in the County of San Diego at all times mentioned herein, and committed the culpable acts against Ms. Granillo in the County of San Diego.

18.   Defendant Thomas Grimaldi worked at LCDC during all times relevant to this Complaint and performed the wrongful acts alleged in this Complaint while working at LCDC. Based on information and belief, Defendant lives in the County of San Diego at all times mentioned herein, and committed the culpable acts against Ms. Granillo in the County of San Diego.

///

///

///

///

5

COMPLAINT                                        CASE NO.

19. Defendant Maria Vargas-Pippins worked at LCDC during all times relevant to this Complaint and performed the wrongful acts alleged in this Complaint while working at LCDC. Based on information and belief, Defendant lives in the County of San Diego at all times mentioned herein, and committed the culpable acts against Ms. Granillo in the County of San Diego.

20. Defendant County of San Diego ("County") is, and at all times mentioned herein was, a public entity authorized by law to establish certain departments responsible for enforcing the laws and protecting the welfare of San Diego County citizens. At all times mentioned herein, Defendant County was responsible for overseeing the operation, management, and supervision of the San Diego County jails such as LCDC, as well as its Corrections Deputies, Medical Staff, and inmates. The County is also responsible for developing, implementing, and amending jail medical policies, procedures, and training. The County has a non-delegable duty to provide adequate medical care and cannot contract out that obligation to third-party medical groups.

21. Because Plaintiffs cannot yet conduct discovery regarding the identity of the deputies, nurses, and supervisors that knew Ms. Granillo was in need of immediate medical care, the names of the other individual Sheriff's deputies, medical staff, and supervisors who are responsible for monitoring and treating Ms. Granillo's severe medical condition (and for failing to summon care) are currently unknown to Plaintiffs. As such, these individuals are sued herein as DOES 1-10, and generally referred to herein as "DOES," or in the context of specific allegations, are also referred to as "DOE Deputies," "DOE Nurses," and "DOE Supervisors."

22. The true names and capacities whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1-10 are unknown to Plaintiffs, who therefore sue said defendants by said fictitious names. Plaintiffs will amend this complaint to show said Defendants' true names and capacities when the same

6

COMPLAINT                                          CASE NO.

have been ascertained. Plaintiffs are informed and believe and thereon allege that all defendants sued herein as DOES are in some manner responsible, and/or conspired together, for the acts and injuries alleged herein.

23. At all times mentioned herein Defendants named as DOES 1-10 were employees and/or independent contractors of Defendant San Diego County and in doing the acts hereinafter described conspired together and acted within the course and scope of their employment. The acts of all Defendants and each of them were also done under the color and pretense of the statutes, ordinances, and regulations of the County of San Diego and the State of California. In committing the acts and/or omissions alleged herein, all Defendants acted under color of authority and/or under color of law. Plaintiffs sue all public employees named as Defendants in their individual capacities.

## IV.

## **FACTUAL BACKGROUND**

24. On July 8, 2022, Ms. Granillo and her boyfriend, the father of A.A., were sleeping in their new residence peacefully and without incident. During execution of a search warrant for another individual, Ms. Granillo was unlawfully arrested by San Diego County DOE Sheriff Deputies, without a warrant, probable cause, or exigent circumstances.

25. Ms. Granillo was arrested for violating a restraining order. However, DOE deputies were aware that the terms of the restraining order had been downgraded to peaceful contact over a year prior. Meaning, the terms of Ms. Granillo's probation allowed Ms. Granillo to have contact with her boyfriend as long as all contact was peaceful, which was the case on the night of July 8, 2022.

26. The terms of Ms. Granillo's restraining order and probation were known to DOE deputies. Additionally, both Mr. Granillo and her boyfriend, advised DOE deputies of the terms of the existing contact order permitted peaceful contact.

7

27. Despite knowing that Ms. Granillo was not violating the terms of the restraining order or probation, and frustrated that they could not locate the individual they were searching for, DOE deputies knowingly, intentionally, and unlawfully arrested Ms. Granillo.

28. Ms. Granillo was transported to LCDC. During the intake process, Ms. Granillo admitted during the screening process that she was an opiate addict. She informed DOE medical staff, including Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, and Defendant Maria Vargas-Pippins, that she would be suffering from severe withdrawals. Notably, this is not the first time Ms. Granillo has been detained at LCDC. On prior occasions, Ms. Granillo was noted to be an opiate addict and was administered withdrawal medications immediately upon booking pursuant to the COWS ("Clinical Opiate Withdrawal Scale") protocols. Ms. Granillo's medical history is set forth in her jail medical file and was known by each Defendant.

29. Pursuant to COWS, inmates anticipated to experience opiate withdrawals must be placed on a treatment plan that requires constant medical monitoring and administration of the following medications: buprenorphine, ondansetron, dicyclomine, loperamide, geri-lanta, and ibuprofen.

30. These medications treat opioid withdrawal symptoms, which could be fatal if untreated. Buprenorphine is the primary medication to treat opioid use disorder and associated acute pain. This medication works as a substitute for opioids without causing euphoria and dangerous side effects, and allows for a gradual weaning process that makes the withdrawal symptoms less intense and fatal. Gastrointestinal upset is the most severe opiate withdrawal symptom. For these symptoms, ondansetron is prescribed to treat nausea and vomiting. Dicyclomine is prescribed to treat belly pain, cramps, and other intestinal problems such as irritable bowel syndrome. Loperamide is prescribed to treat diarrhea. Similarly, geri-lanta is prescribed to treat indigestion and acid-burn. These

8

medications slow the natural movement of the gut and relax the muscles in the stomach and intestine. According to medical literature, opiate withdrawal is most likely to be fatal if symptoms associated with vomiting and diarrhea are not properly treated. Untreated vomiting and diarrhea results in dehydration, eventually resulting in heart failure.

31. Medical records indicate Ms. Granillo should have received the above referenced medications after her medical screening on July 8, 2022. However, these medications were **never** administered. It was not until four days after intake, on July 11, 2022, that medical records indicate Ms. Granillo was begging for withdrawal medication. Ms. Granillo told medical staff that she was feeling very bad and suffering from severe symptoms. Ms. Granillo received her first dose of buprenorphine on July 11, 2022, and was sent back to her cell. Medical records indicate she did not receive any other medications, nor did Ms. Granillo receive medical monitoring throughout those first four days of her detention, or after she complained about suffering from severe withdrawal symptoms.

32. Less than 24 hours after being administered the first dose of buprenorphine, Ms. Granillo was found unresponsive on the toilet. Based on information and belief, Ms. Granillo was experiencing serve nausea, vomiting, and diarrhea, all of which went untreated and unnoticed, resulting in severe dehydration.

33. At 2:04 a.m., DOE deputies removed Ms. Granillo from the toilet and dragged her into the main module. DOE deputies administered multiple doses of Narcan to no effect. DOE deputies, violated County policy and Title 15 Regulations, by intentionally failing to perform CPR to maintain oxygen flow. In fact, medical records indicate that Ms. Granillo went twelve minutes without necessary medical aid. Ms. Granillo did not receive CPR until medical nurses arrived on scene at 2:16 a.m. At that point, paramedics were called, and Ms. Granillo was transported to the emergency room. Ms. Granillo died the next day.

9

Hospital records indicate the **"cause of death to be severe anoxic brain injury secondary to cardiopulmonary arrest."** Meaning, Ms. Granillo suffered from irreversible brain damage.

34.     According to medical literature, anoxic brain injury is caused by a complete lack of oxygen to the brain, which results in the death of brains cells after approximately four minutes of oxygen deprivation.

35.     Interestingly, the San Diego County Medical Examiner opined that Ms. Granillo's cause of death was septic shock, and listed "anoxic brain injury," as a contributing factor. While Plaintiffs question this finding, Plaintiffs also allege that septic shock was a result of a stomach perforation that was caused by Ms. Granillo's untreated vomiting and diarrhea.

## V.

## <u>FIRST CAUSE OF ACTION</u>

**42 U.S.C. Section 1983 – 4th Amendment – Unreasonable Seizure of a Person [By Beverley Alanjary, as Successor in Interest, Against DOE Defendants 1-5]**

36.     Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

37.     Under the Fourth Amendment, a person has the right to be free from arrest or seizure providing the arrest or seizure was without probable cause or other justification.

38.     As alleged above, the current terms of Ms. Granillo's restraining order and probation permitted peaceful contact between Ms. Granillo and her boyfriend. DOE deputies were aware of these terms. Furthermore, Ms. Granillo and her boyfriend repeatedly told DOE deputies that they were not in violation of the restraining order and probationary terms.

39.     At the time of the arrest, Ms. Granillo and her boyfriend were sleeping without disturbance. As such, there were no circumstances known to DOE deputies to conclude that there was a fair probability that Ms. Granillo was committing a

10

COMPLAINT                                             CASE NO.

crime. Accordingly, the seizure and detention of Ms. Granillo was intentionally unreasonable.

40. Had DOE deputies followed the law, and the terms of Ms. Granillo's restraining order and probation, Ms. Granillo would not have been detained at LCDC, and forced with withdrawal without medical treatment or intervention.

41. As a result of each DOE deputies' unlawful arrest, Ms. Granillo suffered four days of severe withdrawals only to be ignored by medical staff. Ultimately, the untreated symptoms worsened and caused Ms. Granillo's untimely death.

42. Based on the injuries alleged above, and Ms. Granillo's premature death, Ms. Granillo's son, as the sole beneficiary of her Estate, is entitled to money damages pursuant to 42 U.S.C. section 1983 to compensate Ms. Granillo for her pain, suffering, loss of life, and for the violation of her Constitutional and Civil Rights.

43. In addition to compensatory, economic, consequential, and special damages, Ms. Granillo's successor in interest is entitled to punitive damages against each Defendant under 42 U.S.C. section 1983, in that their actions were done intentionally and with the intent to violate Plaintiffs' rights or were done with a reckless disregard or wanton disregard for Ms. Granillo's constitutional rights.

## VI.

## SECOND CAUSE OF ACTION

**42 U.S.C. Section 1983 – 14th Amendment – Deliberate Indifference to a Serious Medical Need**

**[By Beverley Alanjary, as Successor in Interest, Against Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, Defendant Maria Vargas-Pippins, and DOE Defendants 5-10]**

44. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

11

COMPLAINT                                           CASE NO.

45.   Beverley Alanjary, as Successor in Interest to Ms. Granillo, asserts this cause of action as Ms. Granillo's personal representative. Cal. Code Civ. Proc. § 377.30.

46.   Under the Fourteenth Amendment, Ms. Granillo has a guaranteed right to medical care while in the custody and control of the County.

47.   Defendants were charged with the duty to act in accordance with the laws of the state and the Constitution and to provide treatment in accordance with a reasonable standard of care. Each has a particularized duty to summon and/or provide adequate medical care when they are on notice that an inmate is in need of such care. They are charged to act as a reasonable medical professional would in the same or similar circumstances.

48.   Pursuant to COWS, inmates anticipated to experience opiate withdrawals must be placed on a treatment plan that requires constant medical monitoring and administration of the following medications: buprenorphine, ondansetron, dicyclomine, loperamide, geri-lanta, and ibuprofen. Each Defendant knew that the policy required immediate administration of these medications in order to treat Ms. Granillo's opiate withdrawals. Each Defendant also knew that the COWS protocol required medical monitoring throughout the withdrawal process. Furthermore, each Defendant knew that failure to treat opiate withdrawal would likely result in death.

49.   As detailed above, Ms. Granillo was honest and upfront with the DOE medical staff, including Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, and Defendant Maria Vargas-Pippins, and told staff that she was an opiate addict and would be suffering from withdrawals.

50.   Each Defendant knew that Ms. Granillo had been treated for opiate withdrawals in her previous detainments, which was reflected in Ms. Granillo's correctional medical profile.

///

12

COMPLAINT                                    CASE NO.

51.    However, medical records indicate that Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, and Defendant Maria Vargas-Pippins, and other DOE medical staff, failed to administer opiate withdrawal medication to Ms. Granillo, and failed to have her medically monitored throughout the withdrawal process.

52.    Buprenorphine is the primary medication to treat opioid use disorder and associated acute pain. This medication works as a substitute for opioids without causing euphoria and dangerous side effects, and allows for a gradual weaning process that makes the withdrawal symptoms less intense and fatal. Gastrointestinal upset is the most severe opiate withdrawal symptom. For these symptoms, ondansetron is prescribed to treat nausea and vomiting. Dicyclomine is prescribed to treat belly pain, cramps, and other intestinal problems such as irritable bowel syndrome. Loperamide is prescribed to treat diarrhea. Similarly, geri-lanta is prescribed to treat indigestion and acid-burn. These medications slow the natural movement of the gut and relax the muscles in the stomach and intestine. According to medical literature, opiate withdrawal is most likely to be fatal if symptoms associated with vomiting and diarrhea are not properly treated. Untreated vomiting and diarrhea results in dehydration, eventually resulting in heart failure.

53.    Medical records indicate Ms. Granillo should have received the above referenced medications after her medical screening on July 8, 2022. However, these medications were **never** administered. It was not until four days after intake, on July 11, 2022, that medical records indicate Ms. Granillo was begging for withdrawal medication. Ms. Granillo told medical staff that she was feeling very bad and suffering from severe symptoms. Ms. Granillo received her first dose of buprenorphine on July 11, 2022, and was sent back to her cell. Medical records indicate she did not receive any other medications, nor did Ms. Granillo receive medical monitoring throughout those first four days of her detention, or after she complained about suffering from severe withdrawal symptoms.

13

COMPLAINT                                    CASE NO.

54.  Less than 24 hours after being administered the first dose of buprenorphine, Ms. Granillo was found unresponsive on the toilet.  Based on information and belief, Ms. Granillo was experiencing serve nausea, vomiting, and diarrhea, all of which went untreated and unnoticed, resulting in severe dehydration.  Furthermore, the failure to administer the COWS medication caused a perforation to Ms. Granillo's stomach ulcer.

55.  At 2:04 a.m., DOE deputies removed Ms. Granillo from the toilet and dragged her into the main module.  DOE deputies administered multiple doses of Narcan to no effect.  DOE deputies, violated County policy and Title 15 Regulations, by intentionally failing to perform CPR to maintain oxygen flow.  In fact, medical records indicate that Ms. Granillo went twelve minutes without necessary medical aid.  Ms. Granillo did not receive CPR until medical nurses arrived on scene at 2:16 a.m.  At that point, paramedics were called, and Ms. Granillo was transported to the emergency room.  Ms. Granillo died the next day.  Hospital records indicate the **"cause of death to be severe anoxic brain injury secondary to cardiopulmonary arrest."**  Meaning, Ms. Granillo suffered from irreversible brain damage.

56.  According to medical literature, anoxic brain injury is caused by a complete lack of oxygen to the brain, which results in the death of brains cells after approximately four minutes of oxygen deprivation.

57.  Interestingly, the San Diego County Medical Examiner opined that Ms. Granillo's cause of death was septic shock, and listed "anoxic brain injury," as a contributing factor.  While Plaintiffs question this finding, Plaintiffs also allege that septic shock was a result of an ulcer perforation that was caused by Ms. Granillo's untreated withdrawal process.

58.  By failing to administer the COWS medications and by failing to medically monitor Ms. Granillo's withdrawal process, Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, and

14

COMPLAINT                                          CASE NO.

Defendant Maria Vargas-Pippins, and other DOE medical staff, made an intentional decision not to treat Ms. Granillo's serious medical needs. Defendants' failure to treat Ms. Granillo's withdrawals put her at substantial risk of suffering serious harm by not taking the reasonable available measures to reduce the risk of serious harm. Under the circumstances alleged above, a reasonable medical professional would have understood the high degree of risk involved, making Defendants' inaction obviously unreasonable.

59. Similarly, DOE Deputies that failed to summon timely medical care and failed to provide CPR upon discovering Ms. Granillo unresponsive are equally deliberately indifferent. Each DOE Deputy recognized that Ms. Granillo had been unresponsive and was in need of immediate medical treatment in the form of CPR. Furthermore, each Doe deputy knew that if Ms. Granillo went four or more minutes without oxygen flow it would result in permanent brain damage.

60. Plaintiffs allege that had DOE deputies provided earlier CPR, Ms. Granillo would not have suffered from permanent anoxic brain damage.

61. Furthermore, Defendants DOE Deputies made an intentional decision to forego adequate safety checks of Ms. Granillo during the hours leading up to her death. Adequate safety checks of detainees are required to address precisely this type of risk to detainee safety. Indeed, at the time of Ms. Granillo's death, the Due Process Clause of the Fourteenth Amendment required (and continues to require) direct-view safety checks sufficient to determine whether a detainee presents a need for medical treatment. *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).

62. By failing to check on Ms. Granillo's welfare when the risk to her health was obvious to any reasonable officer, especially in the last hours of her detainment, including the failure to do adequate safety checks, Defendants Does 6-10 acted with deliberate indifference to Ms. Granillo's health and safety, violating her constitutional rights under the Fourteenth Amendment. Because checking on

15

COMPLAINT                                    CASE NO.

Ms. Granillo's welfare (and the medical care that would have been summoned upon viewing her in obvious medical distress) would have saved her life, Defendants' failure to properly conduct those welfare and safety checks proximately caused Ms. Granillo's death.

63.    During all relevant times, Defendants and DOES 1-10 were acting under color of state law as deputies and/or medical personnel at LCDC.

64.    As an actual and proximate cause of Defendants' deliberate indifference to Ms. Granillo's health and safety, Ms. Granillo suffered (1) damages prior to her death, including those arising from her pre-death pain and suffering over four days, and (2) death valued in the loss of Ms. Granillo's life.  As such, Ms. Granillo's Successor in Interest seeks compensatory damages for this harm.

65.    Defendants and Does 1-10 acted with deliberate and reckless disregard of Ms. Granillo's constitutional rights.  Plaintiffs thus seek an award of punitive damages against all individual Defendants in an amount to be proven at trial.

66.    Plaintiffs are also entitled to costs and reasonable attorney's fees under 42 U.S.C. section 1988.

## VII.

## THIRD CAUSE OF ACTION

**42 U.S.C. Section 1983 – 14th Amendment – *Monell* Municipal Liability Re Opiate Withdrawal Policy**

**[By Beverley Alanjary, as Successor in Interest, Against San Diego County and DOE Supervisors/Policymakers]**

67.    Plaintiffs reallege and incorporates by reference all paragraphs stated above, as though fully set forth herein.

68.    In 2022, <u>nineteen</u> inmates died in San Diego County jails, including Ms. Granillo.  Due to its horrific in-custody death rate over the last ten years, which has been publicized by Grand Jury reports, and other watch dog group reports, the California State Auditor issued a scathing report regarding San Diego County jail

16

deaths. The Auditor found that San Diego County jails had the **most** in-custody deaths than any other county in California. The Auditor found the County "failed to adequately prevent and respond to the problem and called for legislative action" to force the County to incorporate nationally recognized standards to prevent foreseeable deaths.

69. The report stated, "The high rate of death in San Diego County jails compared to other counties raises concerns and suggests that **underlying systemic issues with the Sheriff's Department's policies and practices undermined its ability to ensure the health and safety of the individuals in its custody.**" After a thorough inspection of the jail and an audit of its policies, the Auditor concluded, **"significant deficiencies in the Sheriff's Department's provision of care to incarcerated individuals likely contributed to the deaths in its jails."**

70. The County is also well aware that drug use among individuals in custody in San Diego County jails was at a 22-year high in 2021. In 2021, a staggering 83% of adult arrestees tested positive for at least one controlled substance.

71. According to the State Auditor's report, and findings issued by Citizen Law Enforcement Review Board, prior to Ms. Granillo's death, the County maintained *de facto* policies or widespread, longstanding practices or customs failing to provide critical treatment to individuals suffering from withdrawals.

72. Upon information and belief, the written policy on withdrawal from drugs was deficient on its face. It did not sufficiently identify the nursing requirements for treatment of withdrawal or the timetable to treat such withdrawals. This deficiency was known to the County prior to Ms. Granillo's death.

73. Specifically, the written policy was deficient on its face on when, and under what circumstances, nurses were required to refer the patient to a doctor, or when to transport the patient to the hospital, or when to administer the withdrawal medications. Furthermore, the policy was deficient in that it failed to provide

17

COMPLAINT                                    CASE NO.

guidelines as to when and how to medically monitor inmates on the COWS protocol.

74.     In addition, there was a *de facto* policy of allowing its staff to fail to render care to patients going through withdrawal and ignoring obvious and dangerous symptoms such as persistent vomiting and diarrhea.  There was an additional *de facto* policy of leaving inmates in their cell unattended who were known to be detoxing and suffering from withdrawals.

75.     Upon information and belief, there was a permanent, widespread, well-settled practice or custom of Defendant to deny treatment to inmates in serious medical distress and to place inmates in administrative segregation or general population instead of the medical ward when inmates are in need of medical care.

76.     The above custom and practice was based on the County's custom and practice of disbelieving complaints of inmates when they request medical attention and denying them access to medical care.  The County maintained a custom and practice of assuming an inmate was seeking "secondary gain" and denying them medical care.  This led to a widespread practice of failing to properly check on the welfare of inmates, even those inmates known to have serious medical needs, including conducting proper cell checks of inmate known to be suffering from withdrawals, as required by County's own written policies.

77.     The County's longstanding practices or customs were unconstitutional in that they were deliberately indifferent to a substantial risk of serious harm to inmates known to be withdrawing from drugs.

78.     Prior to Ms. Granillo's preventable death, the following inmates were denied treatment and monitoring for their know and pending drug withdrawals:

///

///

///

///

18

COMPLAINT                                             CASE NO.

a. Richard Diaz, a 40-year-old addict, died from a stomach obstruction after three days of seizures and vomiting due to heroin withdrawal. Had jail staff treated and medically monitored Mr. Diaz's withdrawal process, he would still be alive;

b. On June 25, 2011, Daniel Sisson died from complications made worse by drug withdrawal. The jail staff had failed to monitor Mr. Sisson despite his known withdrawals;

c. In September of 2014, Ronnie Sandoval died in the Jail based on similar failures on the part of medical personnel. Mr. Sandoval showed obvious symptoms of overdose, sweating profusely, and disoriented. The corrections staff told the nursing staff that Mr. Sandoval needed medical treatment, two of them stating that Mr. Sandoval was withdrawing from drugs. The nursing staff did not offer Mr. Sandoval any further medical attention. Mr. Sandoval died later that same day;

d. Jeremy Thomas, a 28-year-old former Marine died May 29, 2019, after he had been booked on drug charges. Mr. Thomas lost his hand in Afghanistan in 2011 and was featured in a Union-Tribune story two years ago about veterans being over-prescribed opioids for pain. Mr. Thomas told medical staff that he was going through withdrawal. Rather than treating him for withdrawals and monitoring him, he was sent to his cell without treatment. Shortly after, he was pronounced dead;

e. In January of 2020, deputies failed to conduct a mandatory safety check on an inmate struggling with drug addiction. CLERB found that the deputy who was supposed to conduct "proof of life" checks in Blake Wilson's module spent

19

COMPLAINT                                          CASE NO.

"approximately one second" looking into Wilson's three-person cell. More than eight hours passed between the time Wilson was last seen alive and when he was found dead;

f.   In November of 2019, Elisa Serna admitted to medical staff that she was addicted to heroin. Ms. Serna was given Zofran, an anti-nausea medication, but was not placed on the COWS protocol and was not administered associated medications, nor was her withdrawal process medically monitored. Similar to Ms. Granillo, Ms. Serna was not administered withdrawal medication until her fourth day in jail and died the following day.

g.   On March 16, 2022, Hayden Schuck died from drug withdrawals. Despite advising medical staff that he used drugs daily, he was not provided withdrawal medications and was not medically monitored during the first week of his detainment. During his detainment Mr. Schuck displayed signs and symptoms of withdrawal which were known to medical staff but were ignored and untreated.

79.   Further, Plaintiffs specifically incorporate by reference the Second and Third Amended Civil Class Action Complaints for Declaratory and Injunctive Relief, Doc. Nos. 81 and 231, in *Dunsmore v. San Diego County Sheriff's Department et al*, 20cv00406-AJB.

80.   Had the County addressed known deficiencies within its jails and made changes in order to comply with nationally recognized standards earlier, these changes could have saved Ms. Granillo's life.

///

///

///

20

COMPLAINT                                    CASE NO.

81. Based on the above allegations, the County, by and through its supervisors and policymakers, were aware of a perpetual pattern of preventable in-custody deaths caused by Defendants' systemic and wide-ranging failures to treat and monitor inmates known to be suffering from drug withdrawals.

82. The unlawful and illegal conduct of each Defendant, including the County of San Diego, deprived Ms. Granillo of the rights, privileges and immunities secured to her by the Constitutions of the United States.

83. As a direct, proximate, and foreseeable result, Plaintiff suffered damages in an amount according to proof at the time of trial.

## VIII.

## **FOURTH CAUSE OF ACTION**

**42 U.S.C. Section 1983 – 14th Amendment – Failure to Train, Supervise, and Discipline**

**[By Beverley Alanjary, as Successor in Interest, Against San Diego County and DOE Supervisors/Policymakers]**

84. Plaintiffs reallege and incorporates by reference all paragraphs stated above, as though fully set forth herein.

85. In 2022, nineteen inmates died in San Diego County jails, including Ms. Granillo.

86. The Auditor's report stated, "The high rate of death in San Diego County jails compared to other counties raises concerns and suggests that underlying systemic issues with the Sheriff's Department's policies and practices undermined its ability to ensure the health and safety of the individuals in its custody." After a thorough inspection of the jail and an audit of its policies and practices, the Auditor concluded, "significant deficiencies in the Sheriff's Department's provision of care to incarcerated individuals likely contributed to the deaths in its jails." **One of those deficiencies was the County's inadequate drug withdrawal policy and related training.**

21

COMPLAINT                                    CASE NO.

87.  The County, by and through its DOE policymakers, failed to properly supervise their employees with respect to the dangers of dehydration and withdrawal despite their personal knowledge of the dangers of withdrawal syndrome.  These defendants knew withdrawal syndrome can occur with discontinuation of non-opioid substances as well, and other medications used to treat the gastrointestinal symptoms associated with opiate withdrawal.  Defendants knew that withdrawals and/or dehydration could be fatal and that there had been prior deaths including those referenced above in paragraph 78.

88.  These defendants were personally aware of the repeated Constitutional violations committed by their subordinates vis a vis a pattern of refusal to provide medical care to inmates known to be withdrawing.

89.  The Auditor also found, "There had been a systemic failure to adhere to the written policies and procedures with respect to providing adequate health care to inmates in the San Diego County jails."

90.  DOE supervisors and policymakers were aware of the history of deaths of inmates at the San Diego Jails related to the failure to provide adequate medical care to inmates known to be suffering from withdrawal.  DOE supervisors and policymakers were aware of previous inmate deaths caused by the failure of contractors and contract medical staff to provide medical care to inmates addicted to drugs.  DOE supervisors and policymakers were aware of the need to closely monitor and supervise the medical staff and to ensure that they understood their responsibilities and job function in a correctional setting.

91.  The training policies of Defendant County were not adequate to train its medical staff to handle the usual and recurring situations with which they must deal, including: (1) providing proper protocol (medication and monitoring) for patients going through withdrawal; and (2) seeking immediate medical and psychiatric care for inmates in obvious distress.

///

22

COMPLAINT                                              CASE NO.

92. Treating patients going through withdrawal is a usual and recurring situation in the San Diego County Jails.

93. Defendant County was deliberately indifferent to the widespread unconstitutional acts by its jail staff and failed to set forth appropriate policies and training regarding the treatment of inmates suffering from withdrawal and medical distress, in general. The County knew its failure to adequately train its staff made it highly predictable that its jail staff would engage in conduct that would deprive persons such as Ms. Granillo of her rights.

94. During the relevant period, all Defendants and DOES were acting pursuant to the policies and training of Defendant County.

95. Aside from properly training its jail staff to treat and monitor inmates suffering from drug withdrawal, upon information and belief, DOE supervisors and policymakers, who were responsible for training jail staff, also failed to supervise and disciple staff as it related to treatment for inmates suffering from withdrawals.

96. As alleged above, the County, by and through its supervisors and policymakers, knew of its failure to properly train and supervise its jail staff to treat and monitor inmates suffering from withdrawals.

97. Had the County addressed these known deficiencies in order to comply with nationally recognized standards earlier, these changes could have saved Ms. Granillo's life.

98. Based on the above allegations, the County, by and through its supervisors and policymakers, were aware of a perpetual pattern of preventable in-custody deaths caused by Defendants' systemic and wide-ranging failures to train its medical and correctional staff to treat and monitor inmates known to be suffering from drug withdrawals.

99. As a result of all Defendants' continued failure to properly train, supervise and discipline its jail staff, Defendant County, and supervisors and policymakers, were deliberately indifferent to the needs of Plaintiff. The failure to

23

COMPLAINT                                          CASE NO.

train, supervise and discipline was the moving force behind the misconduct of all individually named Defendants, including DOES, and the resulting pain and suffering and death.

100.    The unlawful and illegal conduct of each Defendant, including the County and its supervisors and policymakers, deprived Ms. Granillo of the rights, privileges and immunities secured to her by the Constitutions of the United States.

101.    As a direct, proximate and foreseeable result, Plaintiff suffered damages in an amount according to proof at the time of trial.

102.    In committing the acts alleged above, the individual Defendants acted grossly and/or maliciously and/or were guilty of a wanton and reckless disregard for the rights and feelings of all inmates in need of medical assistance and by reason thereof Ms. Granillos heir is entitled to exemplary and punitive damages in an amount to be proven at trial.

## IX.

## FIFTH CAUSE OF ACTION

**42 U.S.C. Section 1983 – 14th Amendment Due Process – Depravation of Familial Association**

**[By Diana Sanchez and A.A. Against Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, Defendant Maria Vargas-Pippins, and DOE Defendants 1-10]**

103.    Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

103.    The Ninth Circuit recognizes that a parent and child have a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her parent. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). This liberty interest is rooted in the Fourteenth Amendment, which states in relevant part that "[n]o State shall . . . deprive any

/ / /

24

COMPLAINT                                                    CASE NO.

person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

104. The protected liberty interest is independently held by both parent and child. *City of Fontana*, 818 F.2d at 1418. A parent's right includes a custodial interest (but only while the child is a minor), and a companionship interest (even after a child reaches the age of majority). *Id.* at 1419; see, e.g., *Strandberg v. City of Helena*, 791 F.2d 744, 748 n.1 (9th Cir. 1986)

105. All Defendants' failures hereinabove described were so egregious and outrageous it would shock the contemporary conscience of society as each Defendants' conduct was deliberately indifferent to Ms. Granillo's constitutional right to adequate medical care.

106. As such all Defendants, and DOES 1-10, are liable for the damages associated with Plaintiffs' loss of familial association.

## X.

## SIXTH CAUSE OF ACTION

### BANE ACT (Civ. Code, §52.1)

**[By Beverley Alanjary, as Successor in Interest, Against Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, Defendant Maria Vargas-Pippins, the County of San Diego, and DOE Defendants 1-10]**

107. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

108. Beverley Alanjary, as Successor in Interest to Ms. Granillo, asserts this cause of action as Ms. Granillo's personal representative. Cal. Code Civ. Proc. § 377.30.

109. The Bane Act provides a civil cause of action against anyone who "interferes by threat, intimidation, or coercion … with the exercise or enjoyment … of rights secured by the Constitution or laws of the United States, or of the rights

25

COMPLAINT                                                    CASE NO.

secured by the Constitution or laws of this state." (§ 52.1, subd. (a); see id., subd. (b).) "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007).

110.   In the Ninth Circuit, as it relates to Bane Act claims relating to inadequate medical care in a correctional setting, controlling law states, with regard to coercive conduct, "at the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct." *M.H. v. County of Alameda* (N.D. Cal. 2013) 90 F. Supp. 3d 889, 898 Courts have equated the "[t]hreat, intimidation, or coercion" requirement to "intentional . . . conduct." *Id.* at 898. "That intent requirement is satisfied where the defendant allegedly acted with '[r]eckless disregard of the right at issue.'" *Cornell v. City and County of San Fransisco* (1st Dist. 2017) 17 Cal. App. 5th at 804.

111.   As alleged above, Ms. Granillo died as a result of unconstitutional conduct by Defendant County of San Diego's employees, named individually above, including the employees' deliberate indifference to the serious and obvious risk to Ms. Granillo's health and safety.  This deliberate indifference to Ms. Granillo's health and safety constituted a violation of California Civil Code, section 52.1, as (1) the County's employees violated and interfered with Ms. Granillo's Due Process rights under the Fourteenth Amendment to the U.S. Constitution by intentionally failing to administer COWS medication, medically monitor Ms. Granillo's withdrawal process, summon medical care, administer CPR, and conduct the welfare check and direct-view safety checks; (2) those employees acted with reckless disregard to Ms. Granillo's constitutional rights; and (3) the employees' intentional failure to safeguard their detainee from the obvious risk of harm was

///

26

COMPLAINT                                    CASE NO.

inherently coercive within the meaning of section 52.1. *See Lapachet v. California Forensic Medical Group, Inc.*, 313 F.Supp.3d 1183, 1195 (E.D. Cal. 2018).

112.   This violation of section 52.1 was the proximate cause of Ms. Granillo's pain, suffering, and death, which were the direct and foreseeable consequences of the unlawful conduct committed by the County's employees, Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, Defendant Maria Vargas-Pippins, and DOE Defendants 1-10.

113.   Because each Defendant acting within the scope of their employment with the San Diego County Sheriff's Department, Defendant County of San Diego is liable for the damages arising from the officers' violation of section 52.1. *See* Cal. Civ. Code § 52.1(n) ("The state immunity provisions provided in Sections 821.6, 844.6, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer . . . or directly against a public entity that employs a peace officer or custodial officer, under this section.") (subdivision (n) effective on Jan. 1, 2022); *see also* Cal. Gov. Code § 815.2.

114.   Plaintiff seeks compensatory damages for the harm Ms. Granillo suffered before her death, *including pain and suffering. See* Cal. Civ. Proc. Code § 377.34(b) (as amended, effective Jan. 1, 2022). Plaintiff also seeks the statutory remedies set forth by sections 52 and 52.1 of the California Civil Code, including treble damages and attorney's fees.

## XI.

## SEVENTH CAUSE OF ACTION

## Negligence (Code of Civil Procedure Section 377.30) – Survival Claim

## (By Successor in Interest Against All Defendants and DOES 1-10)

115.   Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

///

///

27

COMPLAINT                                           CASE NO.

116. Beverley Alanjary, as Successor in Interest to Ms. Granillo, asserts this cause of action as Ms. Granillo's personal representative. Cal. Code Civ. Proc. § 377.30.

117. As set forth above, in light of the special relationship between a pretrial detainee and those medical personnel and correctional deputies in charge of the detainee's health and safety, Defendants and DOES 1-10 owed Ms. Granillo a duty of reasonable care.

118. Furthermore, California Government Code section 845.6 creates an affirmative duty for jail staff to furnish or obtain immediate medical care for a prisoner in their custody when the jailer knows the inmate is in serious medical distress. See California Government Code section 820(a).

119. And as also set forth above, each Defendant breached that duty by failing to administer COWS medication, summon medical care, performing CPR, failing to perform a welfare check on Ms. Granillo after she was found unresponsive, even though any reasonable medical professional or correctional deputy would have understood the high degree of risk to a detainee's health and safety from failing to conduct those welfare and safety checks.

120. Each Defendants' negligence was the proximate cause of Ms. Granillo's pain, suffering, and death, which were direct and foreseeable results of that negligent conduct.

121. Plaintiff's Successor in Interest seeks compensatory damages for the harm Ms. Granillo suffered before her death, *including pain and suffering.* Recently amended Section 377.34, subdivision (b), of the California Code of Civil Procedure provides: "Notwithstanding subdivision (a), in an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable may include damages for pain, suffering, or disfigurement if the action or proceeding was granted a preference pursuant to

///

28

COMPLAINT                                           CASE NO.

Section 36 before January 1, 2022, or was filed on or after January 1, 2022, and before January 1, 2026."

122. Each Defendants' failure to summon medical care or conduct the proper welfare and safety checks constituted contemptible conduct that would be looked down on and despised by reasonable people. Further, Defendants committed this misconduct with a willful and knowing disregard of, and deliberate failure to avoid, the probable dangerous consequences to Ms. Granillo's health and safety. As a result, Plaintiffs seek punitive damages in an amount to be proven at trial. Code Civ. Proc. § 377.34(a).

123. Based on the intentional and/or gross negligent acts of each Defendant and DOE Defendant, and pursuant to California Government Code 815.2 and 815.6, the County is vicariously liable for its employees' negligent and reckless conduct which was performed within the course and scope of their employment.

124. As detailed above, Defendants' conduct amounts to oppression, fraud, or malice within the meaning of Civil Code Section 3294 et supra. Accordingly, punitive damages should be assessed against all individually named Defendants for the purpose of punishment and for the sake of example.

125. As such, the damage associated with each Defendants' negligence is to be determined at the time of trial. Furthermore, Ms. Granillo's successor in interest is entitled to all applicable damages available pursuant to the California Government Code which is to be determined at trial.

## XII.

## EIGHTH CAUSE OF ACTION

**Wrongful Death (Code of Civil Procedure Section 377.60)**

**[By A.A., by and through his Gaudian Ad Litem, Against All Defendants and DOES 1-10]**

126. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

29

COMPLAINT                                                        CASE NO.

127. Under the California Code of Civil Procedure, Plaintiffs A.A. – as Ms. Granillo's only child – has standing to assert a cause of action for the wrongful death of his mother. *See* Cal. Civ. Proc. Code § 377.60(a). Beverley Alanjary, as A.A., Guardian Ad Litem, has standing to assert a cause of action for the wrongful death of Ms. Granillo.

128. As alleged above, Ms. Granillo died as a result of tortious conduct by Defendant Amy Vanbeekom, Defendant Demechiko French, Defendant Thomas Grimaldi, Defendant Maria Vargas-Pippins, and DOE Defendants 1-10, including Defendants' deliberate indifference to Ms. Granillo's health and safety. Defendants' conduct is therefore a "wrongful act" within the meaning California Code of Civil Procedure section 377.60. *See Estate of Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1118 (E.D. Cal. 2013).

129. Defendants' negligence (in the form of failing to summon medical care and provide CPR) provides an additional, independent basis for Plaintiffs' wrongful death claims. As a result, a special relationship existed between Defendants and Ms. Granillo while she was housed at the facility, and these Defendants owed her a corresponding duty of reasonable care.

130. All Defendants and DOE 1-10 breached this duty of care by failing to provide COWS medication, failing to summon medical care, failing to perform CPR, and failing to perform adequate welfare checks on Ms. Granillo after she was found unresponsive.

131. Defendants' tortious conduct – including both the negligent conduct and deliberate indifference to Ms. Granillo's health and safety – was the proximate cause of her death, which was a direct and foreseeable result of that tortious conduct. As a result, Plaintiff A.A. lost his mother prematurely. He is entitled to compensatory damages in an amount to be proven at trial.

132. As a direct and foreseeable result of the conduct alleged above, leading to Ms. Granillo's wrongful death, pursuant to California Code of Civil Procedure

30

COMPLAINT                                    CASE NO.

Section 377.60, A.A. suffered, economically and non-economically, from the loss of his mother. He has suffered and continues to suffer loss of love, society, companionship, comfort, care, guidance, protection, affection, financial support, moral support, and other services as a result of his mother's preventable death. In addition, the death of his mother has caused A.A. extreme emotional turmoil and anguish.

## XIII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.    For compensatory, general, and special damages against each Defendant, jointly and severally, in an amount according to proof;

2.    For punitive and exemplary damages against each individually named Defendant in their individual capacity in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.    For reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C. section 1988 and 12205, California Civil Code sections 52.1 et seq.; and 1021.5, and as otherwise authorized by statute or law; and

4.    For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

## XIV.

## **REQUEST FOR JURY**

Plaintiffs hereby request a jury trial in this action.

Respectfully submitted,

**PHG Law Group**

Dated: January 10, 2024

by: _____*s/ Danielle R. Pena*_____
Danielle R. Pena, Esq.
dpena@PHGLawGroup.com
Attorneys for Plaintiffs

31

COMPLAINT                                        CASE NO.

# EXHIBIIT 1

Danielle R. Pena, SBN 286002
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Petitioner Beverly Alanjary as
Guardian Ad Litem to Abraham Alanjary, and
Successor in Interest to Vianna Granillo

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY ALANJARY as Guardian Ad Litem to A.A., and Successor in Interest to VIANNA GRANILLO,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, and DOES 1-25, inclusive,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF BEVERLY ALANJARY** |

1

DECLARATION OF BEVERLY ALANJARY

## DECLARATION OF BEVERLY ALANJARY

I, BEVERLY ALANJARY, declares as follows:

1.      I am over the age of 18 years. I have personal knowledge of the facts contained in this declaration, and if called as a witness I could and would testify competently to the truth of the facts stated herein.

2.      I am the guardian ad litem for A.A., who is the natural son of the Decedent VIANNA GRANILLO. Attached hereto as Exhibit 1 is a true and correct copy of the birth certificate for A.A.

3.      I am the paternal grandmother of A.A.

4.      A.A. is VIANNA GRANILLO'S only Successor in Interest and succeeds her interest in this action pursuant to California Code of Civil Procedure sections 377.01, 377.11, California Probate Code section 6402, and California Probate Code section 58.

5.      No proceeding is now pending in California for the decedent's estate. Further, no proceeding for admission of the decedent's estate is pending in any other state court at this time.

6.      No other person has a superior right to be the guardian ad litem for A.A., or Successor in Interest to Vianna Granillo, in the pending action or proceeding.

7.      A copy of the decedent's death certificate is attached hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: __01 / 10 / 2024__

_Beverly Alanjary_
BEVERLY ALANJARY

2

DECLARATION OF BEVERLY ALANJARY

# EXHIBIIT 1
# to Beverly Alanjary Declaration

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

## COUNTY OF SAN DIEGO
### ERNEST J. DRONENBURG, JR.
### ASSESSOR/RECORDER/COUNTY CLERK

## CERTIFICATE OF LIVE BIRTH
### STATE OF CALIFORNIA
USE BLACK INK ONLY

120183700509B

| | | | |
|---|---|---|---|
| 2. SEX MALE | 3A. THIS BIRTH SINGLE, TWIN, ETC. SINGLE | 3B. IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC. | 4A. DATE OF BIRTH MM/DD/CCYY 02/27/2018 |

4B. HOUR (24 HOUR CLOCK TIME) 1243

5A. PLACE OF BIRTH - NAME OF HOSPITAL OR FACILITY: PALOMAR MEDICAL CENTER

5B. STREET ADDRESS - STREET AND NUMBER, OR LOCATION: 2185 WEST CITRACADO PARKWAY

5C. CITY: ESCONDIDO

5D. COUNTY: SAN DIEGO

| 6A. NAME OF PARENT - FIRST HOSSAIN | 6B. MIDDLE | 6C. LAST - BIRTH NAME ALANJARY | FATHER | CA | 08/17/1989 |
|---|---|---|---|---|---|
| 8A. NAME OF PARENT - FIRST VIANNA | 8B. MIDDLE MARISSA | 9C. LAST - BIRTH NAME GRANILLO | MOTHER | CA | 10/26/1996 |

I CERTIFY THAT I HAVE REVIEWED THE STATED INFORMATION AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE

12A. PARENT/OTHER INFORMANT - SIGNATURE



RELATIONSHIP TO CHILD: FATHER

DATE SIGNED: 02/12/2018

I CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE DATE, HOUR, AND PLACE STATED

13A. ATTENDANT/CERTIFIER - SIGNATURE AND DEGREE OR TITLE



13B. LICENSE NUMBER: A99128

DATE SIGNED: 02/12/2018

13D. TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT: DANA E. HUSKEY, MD, 488 E. VALLEY PARKWAY #310, ESCONDIDO

14. TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT: CP DE LA TORRE, BC

16. LOCAL REGISTRAR - SIGNATURE: WILMA J. WOOTEN, M.D., M.P.H.

17. DATE ACCEPTED FOR REGISTRATION MM/DD/CCYY: 02/20/2018

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk



Mar 19, 2018

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Recorder/County Clerk

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIIT 2
# to Beverly Alanjary Declaration

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO
### ERNEST J. DRONENBURG, JR.
### ASSESSOR/RECORDER/COUNTY CLERK

**CERTIFICATE OF DEATH**

3202237015514

| | | |
|---|---|---|
| 1. NAME OF DECEDENT FIRST (Given) VIANNA | 2. MIDDLE | 3. LAST (Family) GRANILLO |

AKA, ALSO KNOWN AS—Include AKA's (FIRST, MIDDLE, LAST): VIANNA MARISSA GRANILLO

4. DATE OF BIRTH mm/dd/ccyy: 10/26/1996
5. AGE Yrs.: 25
6. SEX: F

8. BIRTH STATE/FOREIGN COUNTRY: CA
11. MARITAL STATUS: NEVER MARRIED
7. DATE OF DEATH mm/dd/ccyy: 07/13/2022
8. HOUR: 0208

13. EDUCATION: 11
14. WAS DECEDENT HISPANIC/LATINO/A? [X] YES MEXICAN
15. DECEDENT'S RACE: MEXICAN AMERICAN

17. USUAL OCCUPATION: CAREGIVER
18. KIND OF BUSINESS OR INDUSTRY: CARE GIVING
19. YEARS IN OCCUPATION: 6

20. DECEDENT'S RESIDENCE: 235 W AVIATION RD
21. CITY: FALLBROOK
22. COUNTY/PROVINCE: SAN DIEGO
23. ZIP CODE: 92028
24. YEARS IN COUNTY: 25
25. STATE/FOREIGN COUNTRY: CA

26. INFORMANT'S NAME, RELATIONSHIP: DIANA SANCHEZ, MOTHER
27. INFORMANT'S MAILING ADDRESS: 235 W AVIATION RD, FALLBROOK, CA 92028

31. NAME OF FATHER/PARENT: VICTOR
32. MIDDLE: MANUEL
33. LAST: HERNANDEZ
34. BIRTH STATE: BC, MX

35. NAME OF MOTHER/PARENT: DIANA
36. MIDDLE:
37. LAST: SANCHEZ
38. BIRTH STATE: CA

39. DISPOSITION DATE mm/dd/ccyy: 08/17/2022
40. PLACE OF FINAL DISPOSITION: OAK HILL MEMORIAL PARK, 2640 GLENRIDGE RD, ESCONDIDO, CA 92027

41. TYPE OF DISPOSITION: BURIAL
42. SIGNATURE OF EMBALMER: NICHOLAS ADAM GEORGE
43. LICENSE NUMBER: EMB8926

44. NAME OF FUNERAL ESTABLISHMENT: FUNERARIA LA PAZ
45. LICENSE NUMBER: FD2270
46. SIGNATURE OF LOCAL REGISTRAR: WILMA WOOTEN MD
47. DATE mm/dd/ccyy: 08/11/2022

101. PLACE OF DEATH: GROSSMONT HOSPITAL
102. IF HOSPITAL: [X] IP
103. IF OTHER THAN HOSPITAL:

103. COUNTY: SAN DIEGO
105. FACILITY ADDRESS OR LOCATION: 5555 GROSSMONT CENTER DR
106. CITY: LA MESA

107. CAUSE OF DEATH:
IMMEDIATE CAUSE (A): PENDING
108. DEATH REPORTED TO CORONER: [X] YES □ NO  22-02268
109. BIOPSY PERFORMED: □ YES [X] NO
110. AUTOPSY PERFORMED: [X] YES □ NO
111. USED IN DETERMINING CAUSE: [X] YES □ NO

113. WAS OPERATION PERFORMED: UNK
114. IF FEMALE, PREGNANT IN LAST YEAR: □ YES □ NO [X] UNK

115. I CERTIFY... Deceased Attended Since / Deceased Last Seen Alive
116. SIGNATURE AND TITLE OF CERTIFIER:
118. TYPE ATTENDING PHYSICIAN'S NAME, ADDRESS, ZIP CODE

119. MANNER OF DEATH: □ Natural □ Accident □ Homicide [X] Suicide □ Could not be Determined
120. INJURY AT WORK: □ YES □ NO □ UNK
121. INJURY DATE mm/dd/ccyy:  122. HOUR:

126. SIGNATURE OF CORONER/DEPUTY CORONER: GREG PIZARRO
127. DATE mm/dd/ccyy: 07/14/2022
128. TYPE NAME, TITLE OF CORONER/DEPUTY CORONER: GREG PIZARRO, DME

STATE REGISTRAR

---

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk



Aug 16, 2022

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk



005385895



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE